## Bristol-Myers Co. v. Lit Brothers, Inc. No. 2

*Truscott, Trinkle & Wright,* for plaintiff.
*Sundheim, Folz & Sundheim,* for defendant.

PER CURIAM, December 16, 1938.—This matter came before us on plaintiff's exceptions to the adjudication filed by Oliver, P. J., dismissing a bill in equity in which plaintiff sought to restrain an alleged violation of the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266, on the ground that defendant (continuing the regular business practice it has followed uninterruptedly for a period of 30 years) issues yellow trading stamps, when requested, on all purchases of merchandise, including the trademarked articles produced by plaintiff: Bristol-Myers Co. v. Lit Brothers, Inc., 33 D. & C. 52.

The findings of the chancellor are amply supported by the evidence presented and nothing was advanced by plaintiff at the argument upon the exceptions which would either persuade or impel us to overrule his carefully considered and maturely reached findings and conclusions. We wish, however, to point out certain facts, not specifically mentioned in the adjudication, which in

our opinion further strengthen and support the conclusions reached therein.

On September 16, 1937, plaintiff mailed to 4,219 of its retailers in Pennsylvania plaintiff's form of "fair trade contract", with an explanatory letter requesting the retailers to sign such contract. Many of them did so. Defendant did not. Defendant is therefore not obligated to respect any of the provisions of the contract which impose restrictions upon the right of resale greater than those imposed by the Pennsylvania statute.

The Pennsylvania Fair Trade Act, supra, designated as unfair competition only the "Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act". Plaintiff, however, in the contract form it sent to retailers, was not content to rely upon that simple language. It inserted a provision which read:

"1. That Retailer will not, directly or indirectly, by any means, device, combination sale, trading stamp, rebate, or other allowance (such for example, as a credit or refund for empty containers), or otherwise whatsoever, advertise, offer for sale, or sell within the above named State, any of Manufacturer's products herein set forth, from whomsoever obtained, at prices less than" certain specified prices.

Plaintiff, when drawing its contract for use in Pennsylvania, must have had grave doubts as to whether the Pennsylvania Fair Trade Act prohibited the use in good faith of trading stamps. In any event, it apparently concluded it would be on stronger ground if its contract contained a specific prohibition against their use.

Therefore, as pointed out in the adjudication, we have, first, a doubt on the part of the Druggists Association as to the scope of the original fair trade act, adopted by Pennsylvania and many other States in 1933 and 1935, which led the association to sponsor the revised form of act expressly prohibiting the use of coupons, adopted di-

rectly or as an amendment by 17 States, but not by Pennsylvania, in 1937 and 1938, and then we have an apparent doubt as to the scope of the Pennsylvania act arising also in the mind of plaintiff causing it late in 1937 specifically to provide in its contract against the use of trading stamps. We share very strongly the doubt thus so generally felt by the parties most actively interested and see no reason to extend the act to make it accord with an amendment which the Pennsylvania legislature did not adopt or with the contract prepared by plaintiff.

It is a known fact that such items as trading stamps and cigar store coupons are regarded as an annoyance, rather than as an object of value, by many purchasers. Only a few stores bother to issue them. That the trading stamps issued by defendant are not regarded as having a substantial value is further evidenced by the fact that, when merchandise purchased at defendant's store is returned, the full price is always refunded without deduction for any trading stamps that may have been issued even though the customer fails to return them.

Even giving a liberal interpretation to the Pennsylvania Fair Trade Act, it is our opinion its language should not be construed to mean that the giving of trading stamps, in good faith and not as an evasion of the act, pursuant to a long-established business policy and under the circumstances and to the extent disclosed in this case, amounts to "selling . . . at less than the price stipulated". We believe the intention of the legislature can fairly and fully be made effective without so extending the language of the act which appears to have been adopted to render unfair only an actual reduction in price or a plan or scheme which would effect such actual reduction under another name.

The matters referred to in this opinion are intended merely to supplement what has heretofore been stated at length in the adjudication. For the reasons set forth therein and for the additional reasons above set forth, plaintiff's exceptions are dismissed.

*Decree*

And now, to wit, December 16, 1938, plaintiff's exceptions to the adjudication filed herein having been dismissed, it is ordered, adjudged, and decreed:

1. That the bill of complaint is hereby dismissed.
2. That the costs of these proceedings shall be paid by plaintiff.